HOSKINS *v.* ADKINS.

Opinion delivered July 6, 1931.

*Paul McKennon, Barber & Henry* and *Troy W. Lewis,* for appellant.

*C. T. Cotham,* for appellee.

McHANEY, J. This case is an aftermath and grows out of the case of *Adkins* v. *Hoskins,* 176 Ark. 565, 3 S. W. (2d) 322. We there affirmed the action of the court in refusing to cancel certain instruments executed by appel-

lant in that case to his wife, the appellee here, conveying certain property to her in settlement of their marital rights. This action grows out of that settlement. Appellee sought to employ appellant as her attorney in that matter. She had separated from her husband and was living in Texas. She communicated the facts to him and desired him to meet her in Clarksville, the home of her husband. He demanded and received from her a retainer of $100 before he would go to Clarksville. When they met there and conferred about the case, he refused to have anything to do with it until an agreement was had as to his fee. They then entered into a written agreement in this regard in, which appellant agreed to bring for her a suit for divorce against her husband, and to recover her separate estate in the sum of $3,766, which had been invested in property, title to which stood in the name of her husband, and also to recover her dower, alimony, attorney's fees and costs, for a compensation of $100 which had already been paid as a retainer, and 25 per cent. of the recovery of her separate estate, and 33 1/3 per cent. of the recovery of dower and alimony, which sums were to be paid whether the recovery was had either by suit or compromise, and she was to pay his necessary traveling expenses. It was, provided that this contract should not interfere with a reconciliation between the husband and wife.

Acting as her attorney, appellant entered into negotiations with the husband of appellee and succeeded in effecting the settlement mentioned in *Adkins* v. *Hoskins, supra*. After that was accomplished, appellant and appellee entered into another agreement settling the amount of the fee based on the contract above mentioned. Appellee figured out the amount she was due appellant according to the percentages fixed in said contract on a valuation of the property deeded to her by her husband, which she fixed at $7,000, and agreed that appellant was due $2,019.50, for which amount she executed and delivered to him her note and a mortgage on said property to secure same. This suit was brought to foreclose said mortgage to collect the amount of said note. It was de-

fended on the ground that the consideration therefor had failed; that her title to said property had been assailed by her former husband, and that she had been forced to employ other counsel to represent her, and had expended large sums of money in attorneys' fees and expenses, due to his neglect in properly defending said suit, and that he had otherwise breached the contract of employment She prayed a cancellation of the note and mortgage and a judgment on cross-complaint in the sum of $956.70, which she itemized as having been paid out by her in attorney's fees and expenses. The court found that the contract was void because of fraud practiced by appellant upon appellee, she being a client without means and inexperienced in business; that the fee contracted for was out of proportion to the work done; that the change in the original contract, from an interest in the property recovered to a sum of money certain secured by a mortgage on the same property, was accomplished by fraud upon her, she having placed confidence in him; that he did not perform his contract with her, and for that reason she contracted with another attorney to do the work appellant should have done, and that he exacted excessive expense money from her, which amounts constituted ample compensation for all work done by him; and that the contract was champertous, against public policy and void. For these reasons the court decreed a cancellation of the note and mortgage.

We think the court erred in decreeing a cancellation of the instruments sued on. There is nothing in this record to show that appellee was overreached or that fraud was practiced upon her. She is a grown woman, *sui juris*, is not *non compos,* but, on the contrary, she is shown to be a good business woman, having accumulated nearly $4,000 which she permitted her former husband to invest in property, which was recovered for her. She is a woman of ability, being a school teacher, and knew what she was doing when she made the contract with appellant. The courts will not make contracts for parties, nor relieve them of their contracts for fraud unless

it be proved by clear and convincing evidence. In *Adkins* v. *Hoskins, supra,* it was said: "It has been said that the cancellation of an executed contract is an assertion of the most extraordinary power of a court of equity, and that it ought not to be exercised except in a clear case upon strong and convincing proof, and a court would not be justified in canceling a contract unless the proof was clear, strong and conclusive."

The original contract between the parties was executed before the relation of attorney and client was consummated. The $100 retainer fee paid appellant did not establish this relation, and the undisputed proof is that appellant refused to have anything to do with the case until an agreement was had regarding his compensation. They were therefore dealing at arms' length when it was made. The proof further is that the note and mortgage were executed after the settlement had been made with appellee's husband, and that it was entirely satisfactory at that time and presumably remained satisfactory to her until this suit was brought. The execution of the note and mortgage put her in no worse condition, except as to interest on the note. As they stood, they were tenants in common, he owning an undivided one-third in some property and one-fourth in other. He could have immediately brought suit for partition and caused the property to be sold, if not susceptible of division in kind, which we assume it to be. So we fail to find in the evidence anything to satisfy the rule above announced, and hold that the court erred in so deciding.

Shortly after the settlement was made with appellee's husband, he became dissatisfied and brought suit against appellant and appellee to cancel his conveyances. It then became the duty of appellant to defend the action both on his own account and that of appellee. While he had secured a conveyance to appellee of her interest in the property, such conveyance was almost immediately attacked from the source from whence it came. Her agreement to pay expenses related to such expenses as might be incurred in getting title to the property and not

such as were incurred in keeping it. She made no contract with appellant agreeing to pay the expense of that litigation or his personal expenses, for traveling or otherwise, nor was it her duty to hire other counsel. It appears that appellant employed and associated with him in the defense of that action other counsel. Since it was his duty to defend, the employment of other counsel must be held to be at his expense, for the settlement made with appellee's husband and the recovery of the property by it were without value to either, unless the conveyances were sustained. We therefore hold that the court should have decreed a foreclosure of the mortgage for the amount of the note and interest, less all fees and expenses paid by appellee subsequent to the date of the mortgage.

The decree will be reversed, and the cause remanded with directions to enter a decree of foreclosure in accordance with this opinion, and for other proceedings according to law and the principles of equity.